UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PAUL B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 3:18-cv-05218-BHS-TLF <br><br> REPORT AND RECOMMENDATION <br><br> **Noted for May 3, 2019** |

Paul B. has brought this matter for judicial review of defendant's denial of his application for supplemental security income (SSI) benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). As discussed below, the undersigned agrees that the ALJ erred and recommends that the ALJ's decision be reversed and remanded for further administrative proceedings.

## BACKGROUND

Plaintiff, 52 years old, filed an application for supplemental security income benefits in April 2014, alleging disability as of October 2010. Dkt. 8, Administrative Record (AR) 18. The application was denied initially and on reconsideration. *Id.* After a hearing, AR 38-72, an administrative law judge (ALJ) determined that plaintiff was not disabled. AR 18-33.

## THE ALJ'S DECISION

Using the five-step sequential evaluation process, the ALJ found, AR 18-33:

REPORT AND RECOMMENDATION - 1

*Step one*: Plaintiff has not engaged in substantial gainful activity since the application date.

*Step two*: Plaintiff has these severe impairments: knee disorder, spine disorder, anxiety disorder, organic mental disorder, affective disorder, and substance abuse disorder.

*Step three*: These impairments do not meet or equal the requirements of a listed impairment.

*Residual functional capacity (RFC)*: Plaintiff can perform light work, except: He can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can perform simple and routine tasks, make simple work-related decisions, and have occasional interaction with the public.

*Step four*: Plaintiff has no past relevant work.

*Step five*: Because plaintiff can perform jobs that exist in significant numbers in the national economy, he is not disabled.

The appeals counsel denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1. Plaintiff filed a complaint with this Court, seeking reversal and remand for an award of benefits.

## ISSUES FOR REVEW

1. Did the ALJ err in rejecting opinions from three acceptable medical sources?
2. Did the ALJ err in discounting plaintiff's subjective symptom testimony?
3. If the ALJ erred, should the Court remand for further proceedings or an award of benefits?

## DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 416.920. The ALJ assesses the claimant's RFC to determine, at

REPORT AND RECOMMENDATION - 2

1  step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to
2  determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175
3  (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of
4  jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d
5  1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.920(e).

6        The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error,
7  or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648,
8  654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might
9  accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019)
10  (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than
11  a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*,
12  871 F.3d 664, 674-75 (9th Cir. 2017).

13        The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759
14  F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and evidence that
15  does not support, the ALJ's conclusion. *Id.* The Court considers in its review only the reasons the
16  ALJ identified and may not affirm for a different reason. *Id.* "If the evidence admits of more than
17  one rational interpretation," the Court must uphold the ALJ's finding. *Allen v. Heckler*, 749 F.2d
18  577, 579 (9th Cir. 1984).

19      1.    <u>The ALJ's Consideration of Medical Opinion Evidence</u>

20        Plaintiff first challenges the ALJ's decisions, in assessing plaintiff's RFC, to discount two
21  physicians' medical opinions about plaintiff's physical limitations and a psychologist's opinion
22  about his mental-health limitations. The Court should find that the ALJ erred in considering the
23  opinions about plaintiff's physical limitations and that this error was not harmless.

      a.      <u>Medical Opinions on Physical Limitations</u>

Plaintiff's treating physician, Eileen Horner, M.D., opined that due to plaintiff's left-knee instability and thoracic back pain, plaintiff cannot stand longer than 30 minutes and is thus limited to a sedentary exertion level. AR 292-93. Robert Hoskins, M.D., a non-examining state-agency consulting physician, relied on Dr. Horner's opinion to also limit plaintiff to sedentary work. AR 94-96. The ALJ gave the opinions of Drs. Horner and Hoskins "little weight," finding them inconsistent with plaintiff's "strong activities of daily living," conservative treatment, and "very benign" results on examinations. AR 29.

The Commissioner concedes that the ALJ erred in rejecting the opinions of Drs. Horner and Hoskins that plaintiff is limited to sedentary work. Dkt. 11, p. 2.

Nonetheless, the Commissioner asserts that this error was harmless. The Commissioner points out that the vocational expert identified a job that plaintiff could perform at the sedentary level—addresser—and testified that there were 8,000 of these jobs nationwide. *See* AR 68-70. (The vocational expert also identified two other jobs at the sedentary level, but, as the Commissioner acknowledges, it was unclear if those jobs required reasoning levels that the plaintiff meets. *See* Dkt. 11, p. 2 & n.1; AR 68-70.)

Under harmless error review, the Court must determine whether jobs exist in significant numbers either regionally or nationally. *Gutierrez v. Comm'r, Soc. Sec. Admin.*, 740 F.3d 519, 523-24 (9th Cir. 2014). The Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs" but finds a "comparison to other cases . . . instructive." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). The Ninth Circuit observed in *Gutierrez* that an "ALJ's finding that 25,000 national jobs is sufficient presents a close call." *Id.* at 529. The court cited Ninth Circuit cases finding 64,000 jobs, 622,000 jobs, and 125,000 jobs to be significant, and one case that found 1,680 jobs to be insignificant. *Id.* (citing *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995);

REPORT AND RECOMMENDATION - 4

*Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000); *Beltran*, 700 F.3d at 390).

The Commissioner contends that an Eighth Circuit opinion, cited in *Gutierrez*, shows that 10,000 is a significant number of jobs. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997). But the Eighth Circuit held in *Johnson v. Chater*, that 10,000 jobs, together with a vocational expert's testimony "that these figures were merely representative of a larger category of jobs that [the claimant] could perform, including telemarketing"—the job the claimant was performing at the time of the hearing—established that the claimant could perform a significant number of jobs. *Id.* at 180. Such testimony is lacking here.

The Commissioner also cites an unpublished decision—*Hoffman v. Astrue*, No. 09-CV-5252-RJB, 2010 WL 1138341 (W.D. Wash. 2010)—that was decided before the Ninth Circuit published the opinion in *Gutierrez v. Comm'r, Soc. Sec. Admin.*, 740 F.3d 519, 523-24 (9th Cir. 2014). In *Hoffman* this Court found 9,000 jobs to constitute a significant number of jobs. *See* 2010 WL 1138341, at *7. But a more recent, post-*Gutierrez*, unpublished opinion of this Court found 12,700 jobs "clearly insignificant." *Kotok v. Berryhill*, No. C17-191-BAT, 2017 WL 2859507, at *4 (W.D. Wash. 2017).

The Court should apply the Ninth Circuit's precedent to conclude that 8,000 is not a significant number of jobs nationwide. Ninth Circuit would not likely consider 25,000 jobs to be a "close call" yet still find one-third of that number to be "significant." *See Gutierrez*, 740 F.3d at 528. Moreover, the Commissioner cites no case, published or unpublished, to hold that as few as 8,000 jobs is a "significant number." Accordingly, the Court should conclude that the ALJ's error in considering the opinions of Drs. Horner and Hoskins was not harmless.

    b.  Medical Opinion on Cognitive Limitations

  Plaintiff also contends that the ALJ failed to give adequate reasons for discounting the opinion of an examining psychologist, Peter Weiss, Ph.D. The Court should hold that the ALJ's reasons were specific and legitimate and supported by the record, for the reasons explained below.

  The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.*

  Dr. Weiss performed a psychiatric evaluation of plaintiff in March 2014. AR 286. He conducted a clinical interview, reviewed plaintiff's DSHS file, and performed a mental status exam. AR 286-90.

  Dr. Weiss opined in a check-the-box form that, in addition to moderate limitations in several areas, plaintiff is severely limited in performing activities within a schedule, maintaining regular attendance, and being punctual without special supervision, and in completing a normal workday and workweek without interruptions from his psychological symptoms. AR 288. He also opined that plaintiff is markedly limited in adapting to changes and in communicating and performing effectively in a routine work setting. *Id.*

  The ALJ gave "little weight" to Dr. Weiss's opinions about marked and severe limitations. AR 30. She stated, "[t]he evidence does not show that he has any marked limitations in these areas" and, instead, "objective testing shows that the claimant is above average in many areas." *Id.* The ALJ cited the state agency psychological consultants, who opined that plaintiff

REPORT AND RECOMMENDATION - 6

had no understanding and memory limitations. *Id.*; *see* AR 81, 96. And the ALJ found that neuropsychological testing by VA doctors supports the state agency doctors' opinions—and not, by implication, Dr. Weiss's. AR 30.

Plaintiff first asserts that the ALJ was required to give reasons for discounting Dr. Weiss's opinion that were clear and convincing and not merely specific and legitimate. Plaintiff asserts that the Court should consider Dr. Weiss's opinion to be uncontradicted because the only contradicting opinions came from non-examining medical sources, state-agency psychologists Edward Beaty, Ph.D., and Jerry Gardner, Ph.D.

The Court should reject this argument. Under Ninth Circuit law, contradicting opinions from non-examining medical sources are sufficient to reduce the standard of review to "specific and legitimate reasons." *See, e.g.*, *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017) (requiring only specific and legitimate reasons where treating doctor's opinion was "contradicted by the findings of Dr. Rowse and Dr. Blando, the non-examining doctors from the state agency, and, to some extent, the opinion of Dr. Ruggeri, the hand specialist").

An ALJ may reject a medical opinion based on a lack of support from objective evidence in the record and a determination that conflicting medical opinions are entitled to greater weight. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). Here, the record supports the ALJ's finding that the objective evidence, including the thorough neurocognitive exam performed at the VA in August 2014, does not support the marked limitations that Dr. Weiss found. The record contains numerous mental-status examinations from plaintiff's visits to the VA for substance abuse treatment from June 2014 to May 2016. *See* AR 297-475, 481-849. Although a few of these exams show poor-

REPORT AND RECOMMENDATION - 7

1 to-fair cognitive findings in areas of concentration, judgment, and/or insight, AR 289-90, 359, 725, most contain unremarkable findings, *see* AR 356, 364, 420, 426, 781, 801, 836.

The record also supports the ALJ's finding that the August 2014 test results support the state psychologists' opinion that plaintiff "had no understanding and memory limitations." *See* AR 30. The Court can infer that the ALJ was also referring to this testing when she stated that "objective testing shows that the claimant is above average in many areas," contrary to Dr. Weiss's opinion. *See id.* The neurocognitive evaluation was intended to assess for cognitive strengths and weaknesses and recommend treatment planning. AR 314. It consisted of a "clinical interview, record review, and a battery of neuropsychological tests." AR 319.

The record indicates that plaintiff tested "above average in many areas," such as "visual-spatial memory and basic visual-motor construction," and "visuospatial problem solving." AR 319-21. And there were "variable" results in other areas. AR 319-21. For instance, plaintiff's psychomotor control and processing speed were "largely below expectation." AR 320. His performance on attention and working-memory tasks "varied" in speed and accuracy. *Id.* He showed mild impairment in some areas of memory and learning, while others were "very superior." *Id.* And in "complex psychomotor and executive function" his performance ranged "from moderately impaired to mildly impaired." AR 321.

The examiner concluded that plaintiff had "generally intact cognitive functioning" and characterized plaintiff's baseline functioning as "average." AR 321. He found these results "consistent with mild neurocognitive disorder." AR 322. He noted that plaintiff's greatest weakness was in processing speed. AR 321.

Therefore, the ALJ 's finding is supported by the record. Substantial evidence supports the ALJ's conclusion that these results undermined Dr. Weiss's form opinion that plaintiff is

REPORT AND RECOMMENDATION - 8

severely limited in adhering to a schedule, maintaining attendance, completing a normal workday and workweek and markedly limited adapting to changes and communicating. *See* AR 288; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

As the ALJ noted, reviewing doctors Gardner and Beaty opined that plaintiff has no understanding and memory limitations. AR 81, 96. They also opined that he has limitations in concentration and persistence. *Id.* Specifically, they wrote that plaintiff is "[m]oderately limited" in his ability to maintain attention and concentration for extended periods, to complete a workday and workweek without interruptions from psychological symptoms, and to perform at a consistent pace without unreasonable breaks. AR 81, 96-97. Dr. Gardner concluded that plaintiff "can perform simple tasks with moderate difficulty in concentration, persistence, and pace." AR 81-82. Dr. Beaty reached a similar conclusion, that plaintiff "can perform simple, routine, repetitive tasks at a steady moderate pace for a normal workday and workweek." AR 96-97. Drs. Gardner and Beaty found that "Dr. Weiss' opinion is not fully substantiated by medical findings." AR 79, 94. As the ALJ noted, they attributed their decision to Dr. Weiss relying "only on a snapshot of [plaintiff's] functioning." AR 30, 83, 98.

Even if the ALJ could have rationally concluded that the mental status exams and neurocognitive testing supported Dr. Weiss's opinions, the opposite finding is also supported by substantial evidence: as the ALJ found, the "average" functioning and "mild" disorder the testing found is consistent with the state psychologists' opinions that plaintiff has less extreme cognitive limitations. In finding Dr. Weiss's opinions inconsistent with the reviewing doctors' opinions and the objective evidence, the ALJ gave specific and legitimate reasons for discounting Dr. Weiss's opinions. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

REPORT AND RECOMMENDATION - 9

### 2. The ALJ's Consideration of Plaintiff's Testimony

Plaintiff also challenges the ALJ's decision to discount his testimony on the severity of his symptoms. The Court should find that the ALJ failed to give adequate reasons to discount plaintiff's testimony.

The Ninth Circuit uses a two-step process for determining whether the ALJ erred in weighing plaintiff's testimony: First, is there objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms? *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the answer is yes, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Here, the ALJ discounted plaintiff's testimony that both mental and physical symptoms limit his ability to work. With respect to mental-health symptoms, plaintiff testified that he has difficulty with concentration and focus, which manifests when he tries to read. AR 54. He also said his short-term memory is poor. *Id.* He stated that his ability to communicate had worsened. AR 55. And he stated that he takes medicine for anxiety before going in public. AR 65.

With respect to physical symptoms, plaintiff testified that his left knee is unstable. AR 55-56. He testified that he lives alone and does his own chores, but that he to needs to take breaks to sit. AR 65. He testified that he uses a cane and a knee brace. AR 56, 58.

The ALJ discounted plaintiff's subjective testimony because it was inconsistent with the evidence. AR 27. After summarizing select items from the record, the ALJ concluded that plaintiff's testimony about limitations from his symptoms was "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 27-29.

This is not a clear and convincing reason to discount plaintiff's testimony about his limitations. The Commissioner asserts that "[a] reasonable mind could conclude" from the activities the ALJ cited and evidence from the treatment record that plaintiff was less limited than he testified. Dkt. 11, pp. 4-5. But the ALJ was required to state what testimony she determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Although the Court upholds an ALJ's findings when they are supported by inferences reasonably drawn from the record, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004), the ALJ must actually state such inferences to give a cogent explanation. The ALJ needed to make findings sufficiently specific to allow this Court to conclude that she rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). The ALJ's brief recitation of the evidence, followed by a boilerplate conclusion, did not satisfy this requirement. *See* AR 27-29.

### 3. Instructions on Remand

The Court may in its discretion remand "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *see Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018). If the Court concludes that additional proceedings can remedy the errors identified, it should remand for further consideration. *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017).

Plaintiff acknowledges remand is necessary for the ALJ to consider in the first instance whether plaintiff's physical limitations prevent him from working. Dkt. 10, pp. 12-13. He still

contends that if the ALJ erred in considering Dr. Weiss's opinion, then remand for an immediate award of benefits is warranted. As discussed above, the Court should hold the ALJ did not err in considering Dr. Weiss's opinion, and remand for further proceedings is the appropriate remedy.

Regarding mental health conditions, the ALJ should be directed to consider plaintiff's testimony and apply appropriate analysis. *Garrison v. Colvin,* 759 F.3d 995, 1015-18 (9th Cir. 2014). Regarding physical conditions, the ALJ should consider whether, when crediting the opinions of Drs. Horner and Hoskins that plaintiff is limited to sedentary work, plaintiff can still perform jobs that exist in significant numbers nationwide. The ALJ should also assess whether, when plaintiff is properly limited to sedentary exertion, Medical-Vocational Rule 201.12 directs a finding of "disabled" as of his fiftieth birthday.

## CONCLUSION

Based on the above discussion, the undersigned recommends that the Court find the ALJ improperly determined the plaintiff to be not disabled, and that it therefore reverse the ALJ's decision to deny benefits and remand for further administrative proceedings as described above.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **May 3, 2019**, as noted in the caption.

DATED this 16th day of April, 2019.

Theresa L. Fricke
United States Magistrate Judge